UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

MAR 05 2019

David J. Bradley, Clerk of Court

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. **19 CR 148** |
| § | |
| GONZALO JOSE JORGE § | |
| MORALES-DIVO § | UNDER SEAL |
| § | |
| DEFENDANT § | |

**INFORMATION**

THE UNITED STATES CHARGES:

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order.

**Introduction**

At all times material to this information:

1. Petroleos de Venezuela S.A. ("PDVSA") was the Venezuelan state-owned and state-controlled oil company. PDVSA and its subsidiaries were responsible for the exploration, production, refining, transportation, and trade in energy resources in Venezuela and provided funding for other operations of the Venezuelan government. Bariven S.A. ("Bariven") was the PDVSA procurement subsidiary responsible for equipment purchases. PDVSA and its wholly owned subsidiaries, including Bariven, were "instrumentalities" of the Venezuelan government as that term is used in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-2(h)(2)(A). PDVSA officers and employees

were "foreign officials" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

2. At all relevant times, Defendant **GONZALO JOSE JORGE MORALES DIVO** ("**MORALES**") was a Venezuelan citizen and a resident of Florida. **MORALES** invested in, and was a business partner in, a number of closely held companies, including several U.S. companies, used to secure contracts with PDVSA. **MORALES** was thus a "domestic concern" and an officer, director, employee, agent, and shareholder of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

3. At all relevant times, Jose Manuel GONZALEZ Testino ("GONZALEZ"), who has been charged separately, was a U.S. citizen and resident of Florida. GONZALEZ controlled, together with **MORALES** and others, a number of closely held companies, including several U.S. companies, which **MORALES** and GONZALEZ used to secure contracts with PDVSA ("GONZALEZ's companies"). GONZALEZ was thus a "domestic concern" and an officer, director, employee, agent, and shareholder of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

4. Luis Carlos DE LEON Perez ("DE LEON"), who has been charged separately, was a dual citizen of the United States and Venezuela. DE LEON was thus a "domestic concern" as that term is used in the FCPA, Title 15, United States

2

Code, Section 78dd-2(h)(1). DE LEON had previously been employed by instrumentalities of the Venezuelan government, but was no longer so employed during the relevant period. During the relevant time period, DE LEON served as a representative of a group of individuals who controlled Bariven and were known as "the group."

5. Cesar David RINCON Godoy ("RINCON"), who has been charged separately, was a Venezuelan national who, from at least 2011 until June 2013, was employed by PDVSA. RINCON held a number of positions at PDVSA and Bariven, ultimately being named as a high-level Bariven executive in or about January 2012. In his capacity as a Bariven executive, among other duties, RINCON had the responsibility for assembling and revising Bariven's weekly payment proposals, which set forth the debt Bariven owed to its numerous vendors and proposed payments of various amounts to selected vendors. RINCON was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

6. Alejandro ISTURIZ Chiesa ("ISTURIZ"), who has been charged separately, was a Venezuelan national. During the relevant period, ISTURIZ was employed by Bariven as an assistant to the president of Bariven. ISTURIZ was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

3

7. "Company A" was a company controlled by GONZALEZ and in which **MORALES** was GONZALEZ's business partner. Company A existed as a corporation organized under the laws of Florida and Panama, and was used by **MORALES** and GONZALEZ to secure contracts with PDVSA and its subsidiaries.

8. "Company B" was a company controlled by GONZALEZ and in which **MORALES** was GONZALEZ's business partner. Company B existed as a corporation organized under the laws of Florida and Panama, and was used by **MORALES** and GONZALEZ to secure contracts with PDVSA and its subsidiaries.

9. "Company C" was a company controlled by GONZALEZ and in which **MORALES** was GONZALEZ's business partner. Company C existed as a corporation organized under the laws of Florida and Panama, and was used by **MORALES** and GONZALEZ to secure contracts with PDVSA and its subsidiaries.

10. "Bank Account 1" was a bank account located in the Southern District of Texas, into which Company A and Company B made bribe payments during the course of the conspiracy.

11. "Bank Account 2" was a bank account located in the Southern District of Florida, into which Company A, Company B, and Company C made bribe payments during the course of the conspiracy.

## COUNT ONE
## (18 U.S.C. § 371 – Conspiracy)

12. Beginning in at least 2012 and continuing through at least 2014, the defendant,

**GONZALO JOSE JORGE MORALES DIVO,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly conspire, confederate, and agree with GONZALEZ, DE LEON, and other persons known and unknown, to commit offenses against the United States, that is:

   a. to willfully make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official and to a person, while knowing that all and a portion of such money and thing of value would be and had been offered, given, and promised to a foreign official, for purposes of: (i) influencing acts and decisions of such foreign official in his official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and

5

decisions of such government and agencies and instrumentalities, in order to assist **MORALES**, GONZALEZ, and their U.S. companies in obtaining and retaining business for and with, and directing business to, **MORALES,** GONZALEZ, their companies, and others, in violation of the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-2(a); and

b. while in the territory of the United States, willfully and corruptly to make use of the mails and means and instrumentalities of interstate commerce and to do any other act in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official and to a person, while knowing that all and a portion of such money and thing of value would be and had been offered, given, and promised to a foreign official, for purposes of: (i) influencing acts and decisions of such foreign official in his or her official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order

to assist **MORALES**' and GONZALEZ's non-U.S. companies in obtaining and retaining business for and with, and directing business to, **MORALES**, GONZALEZ, their companies, and others, in violation of Title 15, United States Code, Section 78dd-3(a).

## Purpose of the Conspiracy

13. The purpose of the conspiracy was for **MORALES** and GONZALEZ to orchestrate corrupt bribe payments to PDVSA officials, including, but not limited to, RINCON and ISTURIZ, and to thereby enrich **MORALES** and GONZALEZ by obtaining and retaining lucrative energy contracts with PDVSA through corrupt and fraudulent means, including by paying bribes to PDVSA officials.

## Manner and Means of the Conspiracy

14. The manner and means by which **MORALES** and his co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following, while in the Southern District of Texas and elsewhere:

15. **MORALES** and GONZALEZ communicated in person and over the phone about working together to supply equipment to PDVSA through GONZALEZ's companies, including Company A, Company B, and Company C.

16. **MORALES** and GONZALES communicated in person and over the phone about how **MORALES** would obtain financing and provide the up-front

7

capital to purchase the equipment required to fulfill the PDVSA contracts won by GONZALEZ's companies.

17. **MORALES** and GONZALEZ communicated in person and over the phone about how they would obtain and retain contracts with PDVSA, and ensure payment on their PDVSA contracts, by paying bribes to PDVSA officials.

18. **MORALES** and GONZALEZ agreed to pay bribes to PDVSA officials through the use of interstate and foreign wires in order to influence acts and decisions of certain PDVSA officials in their official capacities and to induce the PDVSA officials to do and omit to do certain acts, including, but not limited to:

   a. assisting GONZALEZ's companies, including Company A, Company B, and Company C, in winning PDVSA contracts;

   b. providing **MORALES** and GONZALEZ with inside information concerning the PDVSA bidding process;

   c. awarding GONZALEZ's companies, including Company A, Company B, and Company C, contracts with PDVSA as contracts to be paid in United States dollars instead of Venezuelan bolivars;

   d. assisting GONZALEZ's companies, including Company A, Company B, and Company C, in receiving payment for previously awarded PDVSA contracts, including by requesting payment priority for projects involving GONZALEZ's companies.

19. **MORALES** and GONZALEZ communicated in person, via e-mail, and over the phone about paying bribes to "the group" who controlled PDVSA's procurement subsidiary, Bariven, and met with members of "the group" to discuss bribe payments.

20. GONZALEZ caused bribe payments to be wired from the bank accounts of companies he controlled, and in which **MORALES** invested, to the bank accounts of PDVSA officials, their relatives, or other individuals or entities designated by the PDVSA officials who received the bribes.

21. GONZALEZ wired multiple payments, through companies under his control, to a U.S. account in the name of a company owned by **MORALES**. These wire transfers represented partial repayment to **MORALES** for the up-front financing he provided, and totaled more than $2.5 million between on or about February 29, 2012, and at least on or about April 23, 2014.

## Overt Acts

22. In furtherance of the conspiracy and to achieve the objects thereof, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Texas and elsewhere, at least one of the following overt acts, among others:

23. In or about 2012, **MORALES** met with DE LEON and discussed bribe payments.

24.     In or about 2012, **MORALES** met ISTURIZ and discussed the bribe payments owed to "the group." At this meeting ISTURIZ provided **MORALES** with payment instructions regarding how to make the bribe payments, and **MORALES** provided this account information to GONZALEZ.

25.     Companies controlled by GONZALEZ, and in which **MORALES** was an investor, wired bribe payments to Bank Account 1 and Bank Account 2 for RINCON's benefit, including the following payments on the following dates:

| Overt Act | Date | Beneficiary Bank Account | Payor | Amount |
|---|---|---|---|---|
| 25(a) | 11/27/2012 | Bank Account 1 | Company A | $50,000.00 |
| 25(b) | 1/15/2013 | Bank Account 1 | Company B | $50,000.00 |
| 25(c) | 3/5/2013 | Bank Account 2 | Company A | $50,000.00 |
| 25(d) | 3/7/2013 | Bank Account 2 | Company A | $50,000.00 |
| 25(e) | 3/21/2013 | Bank Account 2 | Company A | $50,000.00 |
| 25(f) | 4/8/2013 | Bank Account 2 | Company A | $75,000.00 |
| 25(g) | 4/17/2013 | Bank Account 2 | Company A | $75,000.00 |
| 25(h) | 4/24/2013 | Bank Account 2 | Company B | $50,000.00 |
| 25(i) | 5/2/2013 | Bank Account 2 | Company C | $29,000.00 |
| 25(j) | 5/14/2013 | Bank Account 2 | Company C | $100,000.00 |
| 25(k) | 6/3/2013 | Bank Account 2 | Company A | $50,000.00 |

26.   On or about March 7, 2014, GONZALEZ caused $35,000.00 to be wired from an account in Company B's name and under GONZALEZ's control to a U.S. account in the name of a company owned by **MORALES**.

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF CRIMINAL FORFEITURE
(28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C))

27. Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), the United States gives notice to **GONZALO JOSE JORGE MORALES DIVO** that in the event of his conviction of the offense charged in Count 1 of the Information, the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

### Money Judgment and Substitute Assets

28. The United States will seek the imposition of a money judgment against the defendant. In the event that a condition listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of the defendant in substitution up to the amount of the money judgment.

RYAN K. PATRICK
UNITED STATES ATTORNEY

ROBERT ZINK
ACTING CHIEF,
FRAUD SECTION
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

BY: /John P./
JOHN P. PEARSON
ROBERT S. JOHNSON
ASSISTANT UNITED STATES
ATTORNEYS

BY: /s/
SARAH E. EDWARDS
SONALI D. PATEL
TRIAL ATTORNEYS

12